UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRETT DOYLE,<br><br>    Plaintiff<br><br>v.<br><br>STATE OF NEVADA, et al.,<br><br>    Defendants | Case No.: 3:19-cv-00725-MMD-CSD<br><br>**Report & Recommendation of United States Magistrate Judge**<br><br>Re: ECF No. 40 |

This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' motion for summary judgment. (ECF Nos. 40, 40-1 to 40-7.) Plaintiff filed a response. (ECF No. 42.)[1] Defendants filed a reply. (ECF No. 46.)[2]

After a thorough review, it is recommended that Defendants' motion be denied.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 7.) The

---

[1] In his response, Plaintiff asks the court to strike Defendants' motion; however, the proper procedural request is for denial of the motion for summary judgment, and not to strike the motion. Therefore, Plaintiff's request to strike the motion should be denied.

[2] Defendants assert in their reply that Plaintiff's opposition makes a request to reopen discovery and permit the introduction of new evidence, citing ECF No. 31 at 24; however, Plaintiff's response is set forth at ECF No. 42. ECF No. 31 is a notice of change of Deputy Attorney General. Page 24 of Plaintiff's opposition does not contain any such argument. Plaintiff does state briefly on page 31 and 32 of his response at ECF No. 42: "perhaps [the] court will allow the introduction of new evidence showing that [Davis] went as far as cancelling all services on Wednesday December 25, 2019, in order to allow Christian faith groups to have their Nevada AR 810 Christmas special worship service…" The court does not construe this as a request to reopen discovery for the purpose of responding to Defendants' motion under Rule 56. In any event, Plaintiff provides a copy of this memo as one of his exhibits.

events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*)

The court screened Plaintiff's complaint and allowed him to proceed with First Amendment Free Exercise Clause and Establishment Clause claims against Scott Davis, Renee Baker, and Harold Wickham. Plaintiff alleges that he is an adherent of Messianic Judaism, and Davis denied Plaintiff's request to observe Messianic Jewish holy days and fast days on the days they actually fall. Plaintiff further alleges that Davis favors Orthodox/Rabbinical Judaism over Messianic Judaism, as well as Catholics and the Siddha Yoga faith group, because he allows them to celebrate their holy days on proper days while denying the same to Messianic Judaism. He avers that Baker and Wickham were made aware of these issues via the grievance process, but they failed to take corrective action.

Defendants moves for summary judgment. They question the sincerity of Plaintiff's religious belief. They also argue they did not substantially burden Plaintiff's religious exercise, and even if they did, there are compelling and legitimate reasons that justify the burden. Defendants further contend that they did not prefer any religion over another. Alternatively, they assert they are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. First Amendment Free Exercise Clause[3]**

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment...prohibits government from making a law prohibiting the free exercise [of

---

[3] Defendants' motion and reply reference the Religious and Institutionalized Persons Act of 2000 (RLUIPA) and its compelling reasons test; however, Plaintiff is not proceeding with a RLUIPA claim in this action, but with First Amendment Free Exercise Clause and Establishment Clause claims.

religion]." *Hartmann v. Cal. Dep't of Corr.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citations and quotation marks omitted, alteration original). "The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Hartmann*, 707 F.3d at 1122; *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008).

To implicate the Free Exercise Clause, a prisoner must establish the practice at issue is both sincerely held and rooted in religious belief. *See Shakur*, 514 F.3d at 884-85. "The Free Exercise Clause does not require plaintiffs to prove the centrality or consistency of their religious practice: 'It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith.'" *Jones v. Slade,* 23 F.4th 1134, 1145 (9th Cir. 2022) (quoting *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 689 (1989)). The test is whether the plaintiff sincerely believes the conduct at issue is consistent with his faith. *Id*. (citation omitted).

"A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams,* 791 F.3d 1023, 1032 (9th Cir. 2015) (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987), *aff'd sub nom. Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989)). "'A substantial burden … place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id*. (quoting *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013)).

"Once a claimant demonstrates that the challenged regulation impinges on his sincerely held religious exercise, the burden shifts to the government to show that the regulation is 'reasonably related to legitimate penological interests.'" *Jones,* 23 F.4th at 1144 (quoting *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015)).

In analyzing the legitimacy of regulation of a prisoner's religious expression, the court is instructed to utilize the "reasonableness" factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987). *See O'Lone*, 482 U.S. at 349; *Jones*, 791 F.3d at 1032; *Shakur*, 514 F.3d at 884. "To ensure that courts afford the appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349 (citation omitted).

The *Turner* reasonableness factors are: (1) "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; (4) the "absence of ready alternatives" and "the existence of obvious, easy alternatives." *Turner*, 482 U.S. at 89-91; *see also O'Lone*, 482 U.S. at 349.

First, Defendants question the sincerity of Plaintiff's religious belief, citing the fact that he recently asked to be taken off of NDOC's Common Fare Menu (CFM) program, which provides NDOC's certified kosher meal. The Free Exercise Clause test, however, focuses on whether the plaintiff sincerely believes *the conduct at issue* is consistent with his faith. Plaintiff's complaint is not about his religious diet, but about observation of holy days and fasts on the days

they fall. Defendants do not question Plaintiff sincerely believes his faith requires that he observe the holy days and fasts on the days on which they fall. Therefore, they are not entitled to summary judgment ton this basis.

Second, the court must determine whether Defendants have demonstrated they have not substantially burdened Plaintiff's religious practice, or whether Plaintiff has raised a genuine dispute of material fact as to this issue.

Defendants acknowledge that at least some of Plaintiff's requests to observe holy days on days that do not fall on Messianic Judaism's weekly day of worship were denied. (ECF No. 40 at 4 ¶ 3.) Plaintiff presents evidence that Davis denied all of his requests to observe holy days and fasts on the day they fall, asserting that it was not on the scheduled worship day for Messianic Judaism. (*See* ECF No. 42 at 45, 47, 49, 51, 52, 53, 54, 56, 60-64, 105, 292.)

Defendants argue they did not substantially burden Plaintiff's religious exercise because Plaintiff can observe his holy days on the days they fall in his cell, and he can celebrate the holy day on his regularly scheduled worship day.

Plaintiff asserts that he must celebrate the holy days on the days that they fall; therefore, it is insufficient that he could celebrate the holy day on his faith group's designated weekly worship day. Moreover, the holy days are designated by NDOC as group worship practices (ECF No. 42 at 40); therefore, observing the holy day alone in his cell is also insufficient.

Plaintiff has created a genuine dispute of material fact as to whether Defendants substantially burdened his religious exercise.

Assuming Plaintiff succeeds in establishing that Defendants have substantially burdened Plaintiff's religious exercise, Defendants argue that denying his requests supports the compelling and legitimate government interests of safety and security because NDOC's approach to

religious requests provides all faith groups access to LCC resources. They assert that LCC's chapel services are in demand, and there are obvious safety considerations when it comes to scheduling group activities.

First, there must be a valid, rational connection between the denial of Plaintiff's requests to observe holy days on the days they fall and the governmental interest of safety and security that Defendants have advanced to justify their denial of Plaintiff's requests.

Defendants cite safety and security concerns that arise with respect to group activity scheduling for chapel services as both a compelling and legitimate interest that justifies denial of Plaintiff's religious observance requests. Defendants provide *no* information about what specific safety and security risks were actually posed by Plaintiff's requests to observe the religious holy days on their designated dates. Moreover, when Plaintiff's requests were denied, he was not advised that it was because of safety and security concerns, but instead, because he requested to observe a holy day on a day that was not the weekly scheduled worship day for Messianic Judaism or because the dates requested did not align with those of Orthodox/Rabbinical Judaism. (*See* ECF Nos. 42 at 45, 47, 49, 51, 52, 53, 54, 57, 58, 60, 61, 62, 63, 64, 292.) Safety and security may well be legitimate correctional interests, however, Defendants have the burden of proving a *valid, rational connection* between those interests and their denial of Plaintiff's requests, *i.e.,* they have to demonstrate, by citing to supportive factual evidence, that those interests were actually at play in denying Plaintiff's requests. A general reference to safety and security is insufficient.

Second, the court must look at whether there are alternative means of exercising the right that remain open to prison inmates. Again, there is a factual dispute as to whether Plaintiff can

8

adequately exercise his religious rights by celebrating a holy day not on its designated day, but on the weekly day designated for worship for Messianic Judaism, or in his cell alone.

Third, the court must address the impact the asserted right will have on guards and other inmates, and on the allocation of prison resources generally. Defendants generally cite safety and security. However, they provide no *specific* information about how accommodating Plaintiff's requests would actually impact the prison. Plaintiff, on the other hand, provides evidence that LCC previously allowed adherents of Messianic Judaism to observe their holy days/fasts on their designated dates, apparently without issue. (*See* ECF No. 42 at 240, 243, 282.)

Finally, Defendants must establish the absence of ready alternatives or the existence of obvious, easy alternatives. Defendants do not specifically address Plaintiff's evidence that Messianic Judaism holy days/fasts were previously observed on their designated dates, other than to state generally that when Chaplain Davis came on board, he made changes to coordinate religious events with times where there was appropriate staffing levels for safety and security purposes. He does not address what safety and security concerns arose that were related to the Messianic Judaism's prior observance of holy days/fasts on their designated dates. Nor does he discuss Plaintiff's point that he did not request to use the chapel, but the unit activity room, which he claims would not require additional staffing.

In sum, there are genuinely disputed material facts concerning whether Defendants' denial of Plaintiff's requests to observe the holy days/fasts on their designated dates is reasonably related to the correctional interests of safety and security advanced by Defendants. Therefore, Defendants' motion for summary judgment should be denied as to the Free Exercise Clause claim.

///

B. Establishment Clause

"The Establishment Clause, applicable to state action by incorporation through the Fourteenth Amendment, states that Congress shall make no law respecting an establishment of religion." *Hartmann,* 707 F.3d at 1125 (internal citation and quotation marks omitted). "This clause 'means at least' that '[n]either a state nor the Federal Government...can pass laws which aid one religion, aid all religions, or prefer one religion over another.'" *Id*. (citation omitted)."[A] prison regulation accommodating inmates' rights under the First Amendment must do so without unduly preferring one religion over another[.]" *Id*. (citation omitted).

Defendants argue they did not prefer any religion over another when they denied Plaintiff's holy day and fast requests. They assert that insofar as Plaintiff references the Catholic's observation of the holy day of the Assumption of Mary and the Siddha Yoga faith group, those groups were accommodated on their regularly scheduled worship days of Wednesday and Monday, respectively.

Plaintiff does argue that the Catholics and the Siddha Yoga faith group were accommodated when he was not. However, Plaintiff's larger point is that Defendants preferred Orthodox/Rabbinical Judaism over Messianic Judaism and failed to recognize that the two faith groups observe holy days and fasts on different dates. (*See* ECF No. 42 at 108-125, 127, 43-149, 155, 162-198, 201, 203-08, 213, 299.) Plaintiff presents evidence that Davis denied at least some of his requests because the dates requested were not on the dates observed by Orthodox/Rabbinical Judaism. (*See* ECF No. 42 at 45, 51, 53, 292.) Davis and Baker specifically told Plaintiff "NDOC does not recognize different holy days for Orthodox and Messianic Jews" and "NDOC recognizes the Orthodox Jewish calendar (Gregorian) in recognizing the observed dates for holy days." (ECF No. 42 at 77, 292.) This was confirmed by

NDOC's Religious Review Team, and reinforced by those responding to Plaintiff's grievances. (ECF No. 42 at 69, 73, 75, 77, 285.) On another occasion, Plaintiff was told that NDOC recognizes dates provided by the Aleph Institute, but Plaintiff clarified that this is an Orthodox/Rabbinical Judaism organization that has no authority over Messianic Judaism, and he still received no relief. (ECF No. 42 at 205-08.)

Plaintiff asserts that the Catholics regular worship day was Sunday (not Wednesday), and the Catholics were granted an additional special service for the Assumption of Mary that was in addition to their regular worship day. With respect to the Siddha Yoga group, Plaintiff states that the Jehovah's Witness group was normally scheduled to be in the chapel and was displaced from the chapel and given another accommodation so the Siddha Yoga group could use the chapel for their service, while Plaintiff's requests were simply denied without any accommodation.

Plaintiff has raised a genuine dispute of material fact as to whether Defendants preferred Orthodox/Rabbinical Judaism over Messianic Judaism or other faiths (such as Catholics and the Siddha Yoga faith group), and Defendants' motion for summary judgment should be denied as to the Establishment Clause claim.

## C. Qualified Immunity

Defendants argue they did not violate Plaintiff's rights, and there was no clearly established right to observe holy days on specific days.

In evaluating whether to grant qualified immunity, the "court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

It was clearly established that a defendant cannot substantially burden an inmate's religious exercise unless that burden is reasonably related to a legitimate government interest. If Plaintiff's version of events is believed, there was no legitimate government interest to support the denial of Plaintiff's requests to observe his holy days/fasts on their designated dates, and Defendants can be found to have violated Plaintiff's rights under the First Amendment's Free Exercise Clause.

Moreover, it was clearly established that Defendants could not prefer one religion over another. Plaintiff has provided evidence that Defendants did not recognize the religious holy days/fasts that Plaintiff claims are celebrated by Messianic Judaism, but instead only recognized the dates observed by Orthodox/Rabbinical Judaism. If Plaintiff's version of events is believed, Defendants can be found to have violated the Establishment Clause.

Therefore, Defendants are not entitled to qualified immunity.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's request to strike Defendants' motion for summary judgment, and **DENYING** Defendants' motion for summary judgment (ECF No. 40).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: October 12, 2022

_____
Craig S. Denney
United States Magistrate Judge